# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| YOLANDA Y. RICHARDSON<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:20-CV-1671-SL<br><br>JUDGE SARA LIOI<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff Yolanda Y. Richardson filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On July 28, 2020, this matter was referred for preparation of a report and recommendation pursuant to Local Rule 72.2, and on May 25, 2021, it was reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the Court **REVERSE** the Commissioner's decision and **REMAND** this matter for further proceedings.

## PROCEDURAL BACKGROUND

Ms. Richardson initially filed for DIB and SSI on June 21, 2017, alleging a disability onset date of January 1, 2011. (Tr. 35, 188, 192). Both claims were denied initially on October 18, 2017, and upon reconsideration on March 1, 2018. (Tr. 71-92, 95-124). On May 7, 2019, an Administrative Law Judge issued a decision finding Ms. Richardson not disabled. (Tr. 32-51). On

June 10, 2020, the Appeals Council denied Ms. Richardson's request for review, thereby making the ALJ's denial of benefits the Commissioner's final decision. (Tr. 1-7). Ms. Richardson then filed a Complaint in this Court challenging the final decision of the Commissioner. (ECF #1).

## FACTUAL BACKGROUND

I. ADMINISTRATIVE HEARING

Ms. Richardson appeared at the February 12, 2019 hearing with counsel. (Tr. 35). Also present at the hearing was James W. Primm, a vocational expert. (*Id.*). The following summarizes the testimony presented during the hearing before the ALJ.

Ms. Richardson testified she has arthritis in her back. (Tr. 57). The pain and numbness travel down her legs and into her feet, more so on the right side. (Tr. 59). Her calf throbs all day. (Tr. 66). Ms. Richardson experiences tingling in both thighs. (Tr. 59). These symptoms are always present. (Tr. 60). Remaining in one position, sitting or standing, for too long aggravates the pain, causing Ms. Richardson to shift around. (*Id.*). This helps but does not completely alleviate the pain. (*Id.*).

Ms. Richardson estimates she can sit for about twenty minutes and stand for about five minutes before needing to move. (*Id.*). When Ms. Richardson stands for any period of time, she has to lean on something. (*Id.*). Ms. Richardson has left stores without purchasing anything because she was unable to stand in line. (*Id.*).

Ms. Richardson also experiences stiffness, but not pain, in her neck. (Tr. 61). In December 2018, Ms. Richardson began taking Cymbalta 20 mg for nerve pain. (Tr. 62). At a follow-up appointment shortly before this hearing, Ms. Richardson's physician increased her dosage to 60

2

mg after she explained she was not experiencing pain relief with 20 mg. (*Id.*). Injections did not relieve her pain, even for a short while. (*Id.*).

Ms. Richardson estimates she can lift five pounds regularly over the course of a workday. (Tr. 63). Lifting a gallon of milk causes discomfort. (*Id.*). Ms. Richardson relies on her mother for heavier lifting. (*Id.*). Though Ms. Richardson lives alone, her mother lives two streets away and is at Ms. Richardson's every day to help. (*Id.*).

Ms. Richardson must use a catheter to empty her bladder. (Tr. 64). She self-catheterizes about five times a day, but this often changes. (*Id.*). She gets urinary tract infections often, requiring her to self-catheterize more often, about eight times a day. (*Id.*). Self-catheterization, Ms. Richardson explained, takes more time than a typical trip to the bathroom would otherwise. (*Id.*). She must wash her hands, use wipes to clean the area, and then insert the catheter. (Tr. 65). Sometimes she is unable to insert the catheter. (*Id.*). The process is more difficult because the position in which she sits to self-catheterize aggravates the pain in her lower back. (*Id.*). The entire process takes about ten minutes. (*Id.*). She cannot self-catheterize on a set schedule. (*Id.*).

The vocational expert also testified at the hearing. The ALJ posed the following hypothetical and asked the vocational expert to determine if such an individual could perform Ms. Richardson's past relevant work: Limited to light work; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, and crouch with frequent balancing; avoid all exposure to unprotected heights; and must have liberal access to restroom facilities (defined by the ALJ as ten percent of the workday). (Tr. 67-68). The expert testified that such an individual could perform work as a customer service representative. (Tr. 68). If the hypothetical

individual required frequent (defined as over twenty percent of the workday) unscheduled breaks or would miss two workdays per month, all work would be precluded. (Tr. 68).

The vocational expert testified that employers tolerate no more than ten percent off task time. (Tr. 69). An employer would tolerate, for example, bathroom breaks every hour lasting three to four minutes, but more than that would preclude work. (*Id.*). When Ms. Richardson's counsel asked whether an employer would tolerate, in addition to ordinary breaks, two or three additional breaks lasting ten minutes each, the expert testified in the negative. "[T]hose longer breaks in addition to the already provided breaks eliminates work in my opinion." (Tr. 69).

## II. PERSONAL AND VOCATIONAL EVIDENCE

Ms. Richardson was 39 years old on the alleged onset date of her disability; she was therefore defined as a younger individual age 18-49. (Tr. 71; *see also* 20 C.F.R. §§ 404.1563 and 416.963). Ms. Richardson was previously employed as a customer service representative; this work was "substantial gainful activity" under the Act. (Tr. 45; *see also* 20 C.F.R. §§ 404.1565 and 416.965). Given her residual functional capacity, the ALJ found Ms. Richardson could perform past relevant work as a customer service representative. (Tr. 46).

## III. RELEVANT MEDICAL EVIDENCE[1]

Ms. Richardson suffers from urinary retention, requiring intermittent self-catheterization at least five times per day and more often when she has a urinary tract infection. (Tr. 336, 338-39). A cystoscopy revealed trabeculation of the bladder. (Tr. 298). Trabeculation of the bladder is the

---

[1] Ms. Richardson focuses her argument on limitations imposed by urinary incontinence. This recitation of relevant medical evidence is limited to those records concerning that particular issue.

thickening of the bladder walls. *Trabeculated bladder*, Stedman's Medical Dictionary 105660 (Nov. 2014).

IV. STATE AGENCY CONSULTANTS

State Agency medical consultants reviewed the medical evidence at the initial and reconsideration levels of the administrative review process. (Tr. 71-92, 95-104). At the initial level, a consultant reviewed Ms. Richardson's medical records and noted Ms. Richardson's urinary retention issues and that she self-catheterizes five to six times a day. (Tr. 75). The consultant completed a Physical Residual Functional Capacity Assessment and determined Ms. Richardson has the capacity to: occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and/or walk for six hours in an eight-hour workday; sit (with normal breaks) for six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; and frequently kneel, crouch, and crawl. (Tr. 77-78). The consultant did not limit Ms. Richardson's capacity to balance or push/pull. (Tr. 78). The consultant's assessment did not provide a limitation to address the need for Ms. Richardson to perform self-catheterization throughout the workday. It is unclear whether the consultant considered and discounted Ms. Richardson's claims regarding self-catheterization or simply did not appreciate the time and effort necessary to perform self-catheterization.

In any event, on reconsideration a different State Agency medical consultant reviewed Ms. Richardson's medical records and completed another Physical Residual Functional Capacity Assessment. This consultant adopted the initial consultant's limitations but determined Ms. Richardson could only frequently balance and occasionally kneel, crouch, and crawl. (Tr. 105).

This consultant also determined Ms. Richardson should avoid all exposure to hazards, including machinery and heights, and should be granted "liberal access to restroom facilities." (Tr. 106).

### THE ALJ'S DECISION

The ALJ's decision, dated May 7, 2019, included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416 971 *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; left-foot disorder; lumbar spine disorder; obesity; and urinary incontinence (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920 (d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds; can occasionally climb of [*sic*] ramps and stairs; can occasionally stoop, kneel, and crouch; can frequently balance; should avoid all exposure to unprotected heights; and should have liberal access to restroom facilities (meaning ten percent of the workday the claimant would be able to leave her work area to use the restroom).

6. The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 37-46).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006), *citing* 42 U.S.C. § 405(g).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986), *citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial

evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

    4.       What is claimant's residual functional capacity and can claimant perform past relevant work?

    5.       Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Ms. Richardson takes issue with the ALJ's residual functional capacity assessment, specifically the limitation to provide "liberal access to restroom facilities (meaning ten percent of the workday the claimant would be able to leave her work area to use the restroom)." (Tr. 39). She argues that the ALJ's definition of liberal access to the bathroom—ten percent of the workday—was outcome determinative and lacked a nexus consistent with Ms. Richardson's symptoms, *i.e.*, the need to self-catheterize five times a day at unscheduled times for ten minutes each time. (Pl.'s Br., ECF #15, PageID 958). She notes the ALJ determined the medical records support Ms. Richardson's need to self-catheterize five times a day but did not discuss Ms. Richardson's testimony about the time necessary for her to self-catheterize. (*Id.*).

9

The Commissioner responds that the ALJ "explicitly found that [Ms. Richardson] required restroom access for up to ten percent of her workday—or forty-eight minutes of an eight-hour workday—which accounted for her need to self-catheterize five times per day, given that she testified she required 'about' ten minutes each time she did so." (Dft.'s Br., ECF #18, PageID 967).

An individual's residual functional capacity is the most the individual can still do despite her limitations and is based on all relevant evidence in the case record. 20 C.F.R. §§ 404.1545 and 416.945. It is an administrative determination left to the ALJ. 20 C.F.R. §§ 404.1546 and 416.946. In rendering a residual functional capacity decision, the ALJ must give some indication of the evidence that is relied upon, and may not ignore evidence not supporting the ALJ's decision, especially when that evidence, if accepted, would change the analysis. *Fleischer*, 744 F. Supp. 2d at 880. To permit meaningful review of an ALJ's decision, the ALJ must provide a narrative that builds an accurate and logical bridge between the evidence and the ALJ's conclusions. *Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014).

In this case, the ALJ's finding that Ms. Richardson required bathroom access up to ten percent of the workday was not, as the Commissioner claims, explicitly made in consideration of the time necessary for Ms. Richardson to perform self-catheterization. In other words, the ALJ did not state that Ms. Richardson needed access to the bathroom for fifty minutes out of the workday because she had to self-catheterize five times and needed ten minutes each time to complete the process. Rather, the ALJ noted the medical record supports Ms. Richardson's need to self-catheterize five times per day and this, in turn, "supports the claimant would need liberal access to the bathroom." (Tr. 40). The ALJ's decision does not provide any indication how "liberal access"

10

equates to "ten percent of the workday." The ALJ's failure to explain the basis for this conclusion precludes meaningful review of the ALJ's decision.

More importantly, the ALJ's statement of the limiting effects posed by Ms. Richardson's urinary retention lacks the precision necessary to assess whether Ms. Richardson can perform past relevant work. The vocational expert's testimony demonstrates that the length of an individual break is relevant to what an employer will tolerate. An employer, according to the expert, will tolerate three- to four-minute breaks every hour to use the restroom, but will not tolerate two or three ten-minute breaks in addition to the ordinary breaks an employer offers throughout an eight-hour workday. Nothing in the record refutes Ms. Richardson's testimony that she needs ten minutes to complete one round of self-catheterization and cannot self-catheterize on a schedule. These facts directly relate to the ALJ's subsequent determination of whether Ms. Richardson's need for unscheduled ten-minute restroom breaks precludes her from performing past relevant work.

On remand, the ALJ should consider the actual limitations imposed by the self-catheterization process and formulate a residual functional capacity assessment that more precisely reflects the frequency and variable duration of Ms. Richardson's unscheduled breaks.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the Commissioner's decision denying DIB and SSI be **REVERSED** and the matter be **REMANDED** to the Commissioner for further proceedings.

Dated: October 12, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).